UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
IN THE MATTER OF THE                )
EXTRADITION OF                      )        Magistrate No. 13-7043-JCB
ALEXANDER HILTON                    )
                                    )
_____  )

## CERTIFICATE OF EXTRADITABILITY

May 3, 2013

Boal, M.J.

The United States government, on behalf of the government of the United Kingdom of

Great Britain and Northern Ireland, which includes the Government of Scotland ("United

Kingdom"), requests that the Court certify to the Secretary of State that Alexander Hilton is

extraditable to the United Kingdom to face criminal prosecution in that nation.  Hilton has been

charged in the United Kingdom with attempted murder and a warrant for his arrest was issued on

December 2, 2011 in the United Kingdom.

Hilton was arrested on February 13, 2013.  After a hearing, the Court found that special

circumstances exist which override the presumption against granting bail in extradition

proceedings and that Hilton does not pose a serious risk of flight or danger to the community,

and ordered him released on conditions.  See Docket No. 24.  The Court (Sorokin, C.M.J.)

released Hilton on conditions on March 5, 2013.  See Docket Nos. 27, 28.

On March 7, 2013, this Court held an extradition hearing.  The government rested on the

complaint and its exhibits, including the Declaration of Ron Katwan, an Attorney-Adviser in the

Office of the Legal Adviser for the Department of State, containing a description and explanation

of the treaty between the United States and the United Kingdom and a copy of the relevant

provisions, and a Certified Request for Extradition, including a copy of the warrant issued

against Hilton and a summary of the facts of the case supporting probable cause.  Docket Nos. 3-

1, 3-2.

Defense counsel called Dr. Judith G. Edersheim and introduced two exhibits into

evidence.[1]  After consideration of the parties' submissions, the evidence introduced at the

hearing, and the parties' arguments, the Court certifies that the elements of extradition are met

and that Hilton is extraditable to the United Kingdom.

I.      FACTS

A.      The Charges

Hilton is wanted by the United Kingdom for trial on charges of attempted murder.  Hilton

is alleged to have attempted to murder Robert Forbes in St. Andrews, Scotland, on or about

March 5, 2011, by spiking a bottle of wine with methanol, giving the bottle to Forbes, and

encouraging him to drink the contents.  Request for Extradition, Docket No. 3-2, at ¶¶ 1.1, 6.1.

The United Kingdom authorities allege that, as a result of continuous encouragement from

Hilton, Forbes drank most of the contents of the bottle of wine.  Id. at ¶¶ 2.9, 2.12.  Forbes fell ill

and was hospitalized.  Id. at ¶ 2.26.  In the opinion of the treating doctors, the high levels of

methanol in his blood would have resulted in Forbes' death had he not received prompt medical

attention and treatment.  Id.  It is alleged that Forbes initially lost his eyesight, although over

time it has improved.  He still requires and receives medical treatment.  Id. at ¶ 3.1.

---

[1] Hilton requested that the exhibits be submitted under seal to the extent that they will not be
made available to the public but may be made available to government agencies needing to
review them.  The Court sealed the exhibits until further order of the Court.  The parties shall
confer and, no later than seven days from the date of this decision, shall submit to the Court a
joint proposed order regarding whether the exhibits should continue to be sealed and if so, under
what circumstances.

During a search of Hilton's dorm room in the days following the incident, police recovered evidence that Hilton had purchased a plastic funnel and glass measuring jug from a local store.  Id. at ¶ 4.3.  They also recovered Hilton's Asus Electronic Notebook.  Id. at ¶ 4.6.  A subsequent analysis showed that it accessed web pages on March 7, 2011 (two days after the poisoning but two days before Forbes' condition was diagnosed) containing information about methanol poisoning and the long term effects of methanol poisoning.  Id.  In addition, the analysis showed that on an unknown date a Google search had been carried out for the terms "methanol mixed with ethanol."  Id.

Scottish authorities interrogated Hilton for five hours on March 11, 2011.  Id. at ¶ 5.1-5.11.  He was not charged with a crime then.  On March 15, 2011, Hilton sought and subsequently received a leave of absence from St. Andrews due to his poor academic record and his personal and medical circumstances (described below).  Id. at ¶ 7.1.  Hilton left Scotland and returned to Massachusetts on March 22, 2011.  Docket No. 22 at 1.

Hilton was charged with attempted murder on December 2, 2011.  See Docket No. 3-2 at 18.  A complaint was filed in this Court on February 12, 2013.  Docket No. 3.  Hilton was arrested on February 13, 2013.

B.      Hilton's Mental Health Problems

Hilton has a long history of mental illness and psychological deficits.  Dr. Judith G. Edersheim, a psychiatrist retained by defense counsel to evaluate Hilton,[2] testified that, in her

---

[2] Dr. Edersheim testified that she interviewed Hilton for seven hours, interviewed his parents and other family members, reviewed school records and medical records, including three psychological testing reports and one neuropsychological testing report, and spoke with Hilton's mental health treatment providers.

opinion, Hilton is suffering from a serious mental illness, most likely a thought disorder, although she does not have a specific diagnosis at this time.[3]

Hilton has a history of suicidal thoughts and ideations.  For example, on July 31, 2012, Hilton expressed suicidal thoughts and plans to his parents, who took Hilton to the UMass Hospital for an emergency psychiatric evaluation.  Docket No. 23-1 at ¶ 5(j).  He was then released to his parents' custody and referred to a Marlborough Hospital for a partial hospitalization program, which he attended from September 3, 2012 to September 19, 2012.  Id. He was placed on psychiatric medications and sees a psychotherapist twice a week.  Id. at ¶ 7(b). Hilton returned to UMass for an emergency evaluation on November 14, 2012 and was again admitted to a partial hospitalization program on November 15, 2012 and prescribed medications for anxiety and depression.  Id. at ¶ 7(c).

After his arrest on February 13, 2013, Hilton was transferred to Wyatt Detention Facility. Immediately upon detention, Hilton was observed engaging in suicidal behaviors and was put on suicide watch.  Docket No. 22-1 at ¶ 2(c).  He reportedly became increasingly despondent and refused nutrition.  Id.  He also expressed overt psychotic thoughts, including auditory, visual and tactile hallucinations.  Docket No. 22-1 at ¶ 2(d).

In Dr. Edersheim's opinion, Hilton's suicidal thoughts and ideations worsen whenever he is away from his home and the set of elaborate supports that his family has put into place in order to help him function.  It is her opinion that extradition to Scotland would greatly increase Hilton's risk of committing suicide.

---

[3] The government objected to Dr. Edersheim's testimony on the grounds that such testimony falls outside of the scope of these proceedings.  Because the Court had not yet ruled whether Hilton's humanitarian grounds were properly before this Court, the Court allowed the testimony over the government's objection.

Hilton has been receiving mental health treatment consisting of psychotherapy and anti-psychotic and anti-depressant medications. According to Dr. Edersheim, Hilton's relationship with his psychotherapist would be difficult to recreate with a different treatment provider and his medication regimen necessitates constant monitoring. It is not clear to her whether Hilton would be able to receive equal or similar treatment in the United Kingdom.

II.     Standard Of Review

Extradition is an executive, not judicial, function. Martin v. Warden, 993 F.2d 824, 828 (11th Cir. 1993). The power to extradite derives from the President's power to conduct foreign affairs. Id. (citations omitted). An extradition proceeding is not an ordinary Article III case or controversy and it is not a criminal proceeding. Id. "Rather, the judiciary serves an independent review function delegated to it by the Executive and defined by statute." Id. (citation omitted).

The federal extradition statute empowers an extradition officer, including "any magistrate judge authorized so to do by a court of the United States"[4] to hear and consider evidence of a fugitive's criminality upon the filing of a formal complaint. 18 U.S.C. § 3184; Austin v. Healey, 5 F.3d 598, 602-604 (2nd Cir. 1993) (magistrate judge has authority to act as extradition officer); Ward v. Rutherford, 921 F.2d 286, 289 (D.C. Cir. 1990) (same). If the extradition officer determines that the evidence is sufficient "to sustain the charge under the provisions of the proper treaty or convention," she is instructed to issue a certificate of extradibility to the Secretary of State, who has final and discretionary authority to extradite the fugitive. 18 U.S.C. § 3184; United States v. Kin-Hong, 110 F.3d 103, 109 (1st Cir. 1997).

---

[4] In this Court, Magistrate Judge Rule 1 authorizes each United States Magistrate Judge to conduct extradition proceedings in accordance with 18 U.S.C. § 3184. Rule 1 of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts.

At the extradition hearing, the judicial officer's inquiry is limited to a narrow set of issues: (1) whether a valid treaty exists; (2) whether the crime charged is covered by the relevant treaty; and (3) whether there is probable cause to believe that the individual committed the crimes alleged by the requesting nation.[5]  Skaftouros v. United States, 667 F.3d 144, 154-155 (2nd Cir. 2011); Kin-Hong, 110 F.3d at 110.  "An extradition hearing is 'not to be regarded as in the nature of a final trial by which the prisoner could be convicted or acquitted of the crime charged against him,' and is 'not the occasion for an adjudication of guilt or innocence.'" Skaftouros, 667 F.3d at 155 (internal citations omitted).  Rather, the extradition hearing is "essentially a preliminary examination to determine whether a case is made out which will justify the holding of the accused and his surrender to the demanding nation."  Id. (citations omitted).  "[T]he judicial officer's function is much the same as his 'accustomed task of determining if there is probable cause to hold a defendant to answer for the commission of an offense.'"  Id. (citation omitted).

Given the limited purpose of extradition hearings, the individual whose extradition is requested (commonly called the "relator") does not benefit from most of the protections traditionally afforded to defendants in criminal proceedings.  Neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply to extradition proceedings.  Kin-Hong, 110 F.3d at 120; see also Matter of Extradition of Handanovic, 826 F. Supp. 2d 1237, 1239 (D. Or. 2011) ("An extradition hearing is not a criminal proceeding, and the person whose return is sought is not entitled to the rights available in a criminal trial at common law.").  Unsworn statements of absent witnesses and hearsay may be considered.  Skaftouros, 667 F.3d at 155 n. 16 (citation omitted); Kin-Hong, 110 F.3d at 120.  The relator has no right to cross-

---

[5] It is well established that the magistrate judge must construe a treaty's provisions liberally to favor the obligation to surrender fugitives.  See Kin-Hong, 110 F.3d at 110.

examine witnesses or introduce evidence to rebut that of the prosecutor.  <u>Matter of Extradition of Handanovic</u>, 826 F. Supp. 2d at 1239; <u>Yin-Choy v. Robinson</u>, 858 F.2d 1400, 1406-1407 (9th Cir. 1988).  An extradition hearing does not require a higher standard of evidence than a probable cause hearing.  <u>Kin-Hong</u>, 110 F.3d at 120.

Authentication is the only requirement for admissibility of evidence in an extradition proceeding.  <u>Yin-Choy</u>, 858 F.2d at 1406.  Pursuant to 18 U.S.C. § 3190, documents or other evidence "shall be received and admitted as evidence for all the purposes of such [extradition] hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required."[6]

III.    ANALYSIS

At the extradition hearing, Hilton conceded that a valid treaty exists, that the crime charged (attempted murder) is covered by the treaty, and that the government has shown probable cause.  In addition, he does not contest the authenticity of the documents presented by the government in support of its request for extradition.  Instead, Hilton argues that extradition

_____

[6] In addition, the treaty between the United States and the United Kingdom provides:

Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalization.  "Ministry of Justice" shall mean, for the United States, the United States Department of Justice; and, for the United Kingdom, the Home Office.

Annex to Extradition Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland, Article 2(1), Article 9.

would violate the United States Constitution and the treaty between the United States and the

United Kingdom (see Docket No. 26 at 1-7), and that he should not be extradited on

humanitarian grounds because he has severe psychological impairments which lead to a real risk

that he will commit suicide if extradited (see Docket No. 26 at 7-11).  Neither argument warrants

relief in this Court.

A.    Hilton's Extradition Would Not Violate The Treaty Or His Constitutional Rights

Hilton argues that extradition to Scotland would violate his constitutional rights and, as a

consequence would violate certain provisions of the extradition treaty between the United States

and the United Kingdom.  He notes that the treaty does not "require[] or authorize[] legislation or

other action by the United States of America that is prohibited by the Constitution of the United

States" and that the treaty "shall be implemented by the United States in accordance with the

Constitution of the United States and relevant federal law…"  Docket No. 26 at 2.  He then avers

that Scottish law requires only a simple majority of jurors in order to return a guilty verdict.  Id.

at 3.  Accordingly, he argues that the system of Scottish juries violates the Due Process Clause of

the Fifth Amendment to the U.S. Constitution.  Id.   Thus, he continues, extradition to Scotland

would violate both the U.S. Constitution and the terms of the treaty.  Id. at 3-7.  The Court

disagrees.

The advice and consent of the Senate is a constitutional prerequisite to a valid treaty, and

the executive branch does not have the power to extradite alleged criminals absent a valid

extradition treaty.  Matter of Extradition of Then, 92 F.3d 851, 853 (9th Cir. 1996) (citing

Valentine v. United States ex rel. Neidecker, 299 U.S. 5, 8-9 (1936)).  "The existence of such a

treaty between the United States and another nation indicates that, at least in the general sense,

the executive and legislative branches consider the treaty partner's justice system sufficiently fair

to justify sending accused persons there for trial." Matter of Extradition of Howard, 996 F.2d

1320, 1329 (1st Cir. 1993).  Accordingly, it is well established that courts may not investigate the

fairness of a requesting nation's justice system or the procedures or treatment which await a

surrendered fugitive in the requesting country (commonly called the "rule of non-inquiry").  Id.;

Kin-Hong, 110 F.3d at 110.  Questions regarding the continuing validity of an extradition treaty

are considered political questions and courts must defer typically to the intentions of the State

Departments of the two signatory countries.  Matter of Extradition of Manzi, 888 F.2d 204, 206

(1st Cir. 1989); Matter of Extradition of Then, 92 F.3d at 854.

It is well-settled that an individual cannot block his extradition simply because the other

country's judicial procedures do not comport with the requirements of the U.S. Constitution.

Plaster v. United States, 720 F.2d 340, 349 n. 9 (4th Cir. 1983) (citing Neely v. Henkel, 180 U.S.

109 (1901)).  "Instead, he must claim that the conduct of our government is violating his

constitutional rights."  Id. (emphasis in original).

Here, the extradition treaty between the United States and the United Kingdom does not

state that the United Kingdom needs to abide by the U.S. Constitution.  Only the United States

government must abide by the U.S. Constitution.  Hilton has not pointed to any action by the

United States government that violates his constitutional rights.

Hilton also appears to argue that the treaty is not valid as applied to him because the

Senate was not made aware of the differences between Scottish criminal procedure and criminal

procedure in the rest of the United Kingdom as they relate to juries, and had the Senate been

made aware of those differences it would not have ratified the treaty.  Docket No. 26 at 5-7.  As

discussed previously, such argument is not for this Court.  Rather, that is an argument for the

Executive Branch, who has final authority to decide whether or not to extradite Hilton.  Cf.

Matter of Extradition of Then, 92 F.3d at 854 (noting that "federal courts are not as well equipped as the Executive to determine when [a legal system of a separate entity within the United Kingdom] brings changes that terminate old treaty obligations.").

Finally, although the First Circuit has recognized the possibility that "serious due process concerns may merit review beyond the narrow scope of inquiry in extradition proceedings," Matter of Extradition of Manzi, 888 F.2d at 206, the issues raised by Hilton, namely the number of jurors required for a guilty verdict and right of witness confrontation, do not rise to that level. Indeed, the First Circuit has observed that the United States "has maintained, over time, extradition treaties with some of the world's most oppressive and arbitrary regimes." Kin-Hong, 110 F.3d at 111 n. 12. "The rule of non-inquiry expresses *no* judgment about a foreign nation's ability and willingness to provide justice; it simply defers that assessment to the second part of every extradition proceeding-review of extradibility and determination of the appropriateness of surrender by the Secretary of State." Id. (emphasis in original). Accordingly, Hilton's concerns regarding the fairness of criminal procedure in Scotland should be raised before the Department of State, not this Court. On the basis of this argument, therefore, Hilton may not avail himself, before this Court, of the humanitarian exception to prevent extradition.

      B.     Hilton's Mental Illness Does Not Provide A Basis Upon
             Which To Refuse To Issue A Certificate Of Extradition

Hilton also argues that his mental health condition precludes extradition on humanitarian grounds. Docket No. 26 at 7-11. He argues that given his longstanding serious mental illness, extradition violates his constitutional and human rights by putting him at a great risk that he will commit suicide. Id. at 8.

The decision to block extradition based on humanitarian grounds is solely within the discretion of the Secretary of State. Kin-Hong, 110 F.3d at 110; Matter of Extradition of

Patterson, No. 11-5459, 2012 WL 5379152, at *2 (C.D. Cal. Oct. 30, 2012) (citing Trinidad y

Garcia v. Thomas, 683 F.3d 952, 960 (9th Cir. 2012) ("We have long held that it is the

Secretary's role, not the courts', to determine whether extradition should be denied on

humanitarian grounds. . .").  Although some courts have mentioned the possibility of a

"humanitarian exception" to the rule of non-inquiry, it appears that no federal court has applied

such an exception to actually block an extradition.[7]  See Martin, 993 F.2d at 830 n. 10 ("We are

aware, however of no federal court decision that has actually blocked extradition on this ground

. . ."); Matter of Extradition of Stern, No. 07-21704, 2007 WL 3171362, at *4 (S.D. Fla. Oct. 25,

2007) ("[T]he humanitarian exception remains quite theoretical because no federal court has

applied it in the extradition context.").

 Although the Court appreciates the seriousness of Hilton's mental health problems, it

finds that it does not have the authority to consider them in its decision.  Indeed, this argument is

more appropriately presented to the Secretary of State as this Court's jurisdiction is limited to

ensuring that Hilton is subject to extradition.  Having found that the elements for issuing a

certificate of extradibility are met (and indeed, Hilton has conceded that they are), the Court

must issue a certificate of extradibility.

 C. Continued Release And Stay Of Extradition

 This Court found that special circumstances exist in this case with respect to release and

that Hilton does not pose a serious risk of flight or danger to the community and, accordingly,

ordered Hilton released on bail during the pendency of these proceedings.  Docket No. 24.  Title

18, United States Code, Section 3184 provides that, after the extradition hearing, if the Court

determines that "the evidence [is] sufficient to sustain the charge," then the judicial officer "shall

---

[7] Indeed, Hilton has cited no example.

issue his warrant for the commitment of the person."  Hilton requests a stay of the Court's certificate of extradition and commitment order while he prepares and files a petition for a writ of habeas corpus.[8]  The government is not opposed to staying extradition while Hilton pursues habeas relief, but argues that Hilton must be detained once the Court certifies him as extraditable.

Courts have authority to grant release during the pendency of habeas corpus proceedings. See Beaulieu v. Hartigan, 554 F.2d 1, 1-2 (1st Cir. 1977); Matter of Extradition of Kapoor, No. 11-M-456, 2012 WL 2374195, at *3 (E.D.N.Y. June 22, 2012) (collecting cases); Wroclawski v. United States, 634 F. Supp. 2d 1003, 1005-1006 (D. Ariz. 2009); Matter of Extradition of Harshbarger, No. 5:08-MJ-00109, 2009 WL 702925, at *3 n. 6 (M.D. Pa. Mar. 12, 2009).  As detailed in the March 4, 2013 order, Hilton demonstrated special circumstances, that he was not a flight risk and that he was not a danger to the community.  Docket No. 24.  The government has not argued that the factors identified in the Court's prior decision are no longer present.  In addition, there is no indication that Hilton has failed to comply with his conditions of release thus far.  Accordingly, the Court finds that a stay of the certificate of extradition is appropriate while Hilton pursues habeas relief and that continued release on conditions is also appropriate during the pendency of any such proceedings.

IV.   ORDER

In accordance with the foregoing memorandum and pursuant to 18 U.S.C. § 3184, the Court finds that Alexander Hilton is extraditable to the United Kingdom for the offense charged of attempted murder.  The Certificate of Extradition is stayed for 60 days from the date of its

---

[8] "As an order of extradition is not a 'final order' and direct review is therefore unavailable, limited appellate review may be obtained only on a petition for a writ of habeas corpus." Koskotas v. Roche, 931 F.2d 169, 171 (1st Cir. 1991) (internal citations omitted).

issuance to allow Hilton to pursue habeas relief and, if a petition for writ of habeas corpus is filed, during the pendency of such proceedings.

It is further ORDERED that Hilton shall remain released on the same conditions set forth in the March 5, 2013 Order Setting Conditions of Release pending the outcome of habeas corpus proceedings.

No later than seven days after the date of this decision, the government shall file a proposed extradition certification and order of commitment.

     /s/  Jennifer C. Boal
Jennifer C. Boal
United States Magistrate Judge