UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF ALEXANDER HILTON | ) ) ) ) ) ) |  Magistrate No. 13-7043-JCB |

MEMORANDUM AND ORDER

June 26, 2013

Boal, M.J.

The United States government moves for an order lifting the stay of the certificate of extradition and revoking bail in this matter. Docket No. 38. For the following reasons, the Court denies the government's request.

I. Factual And Procedural Background

The United States government, on behalf of the government of the United Kingdom of Great Britain and Northern Ireland, which includes the Government of Scotland ("United Kingdom"), filed a complaint on February 12, 2013, seeking an arrest warrant and the extradition of Alexander Hilton to the United Kingdom. Docket No. 3. Hilton has been charged in the United Kingdom with attempted murder and a warrant for his arrest was issued on December 2, 2011 in the United Kingdom.

Hilton was arrested on February 13, 2013. After a hearing, the Court found that special circumstances exist which override the presumption against granting bail in extradition proceedings and that Hilton does not pose a serious risk of flight or danger to the community, and ordered him released on conditions. See Docket No. 24. The Court (Sorokin, C.M.J.) released Hilton on conditions on March 5, 2013. See Docket Nos. 27, 28.

1

On March 7, 2013, this Court held an extradition hearing.  Docket No. 32.  On May 3, 2013, the Court issued a decision finding that Hilton is extraditable to the United Kingdom for the offense of attempted murder.  Docket No. 36.  The Court ordered that the certificate of extradition be stayed for 60 days from the date of its issuance to allow Hilton to pursue habeas relief.  Id. at 12-13.  In addition, the Court denied the government's request that Hilton be detained pending extradition and ordered him released on the same conditions set forth in the March 5, 2013 order.  Id. at 11-13.

On May 10, 2013, the government filed a memorandum opposing a further stay and requesting that the Court revoke Hilton's bail.  Docket No. 38.  The Court issued the certificate of extradition on May 17, 2013 and, in accordance with its May 3, 2013 decision, stayed the certificate for 60 days to maintain the status quo while Hilton decides whether, and on what grounds, to pursue habeas relief.  Docket No. 40.  The Court also stated that it would further consider the government's arguments after defense counsel filed its response to the government's memorandum.  Id.  Hilton filed a response to the government's memorandum on May 24, 2013.  Docket No. 41.

II.    Analysis

    A.    Stay Of Certificate Of Extradition

At the extradition hearing, in response to the Court's inquiry, the government stated that it had no objection to a short stay while Hilton pursued habeas relief.  See Docket No. 41-1 at 2-3.  The government now opposes such a stay, arguing that a stay is not necessary in this case because it is the practice of the Secretary of State to suspend extradition while habeas corpus litigation is ongoing before the District Court.  Docket No. 38 at 2.  In addition, the government argues that issuance of a stay is legally questionable in this context because certification of

extradition does not order or compel any action by the Secretary of State. Id. at 3-4. This Court disagrees.

First, although it may be the practice of the Secretary of State to suspend extradition while habeas corpus litigation is ongoing, there appears to be no impediment to Hilton's extradition prior to his filing of a habeas petition. In addition, the power to stay an order pending review of its legality "has been described as 'inherent,' preserved in the grant of authority to federal courts to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" Nken v. Holder, 556 U.S. 418, 426 (2009) (citations omitted). Like a stay of a removal order pending a petition for review, a stay of the order certifying extradition "does not ask for a coercive order against the [Secretary of State], but rather for the temporary setting aside of the source of the [Secretary of State's] authority to [extradite]." Id. at 429. Although the stay acts to bar the Secretary of State from extraditing the defendant, "it does so by returning to the status quo—the state of affairs before the [extradition order] was entered." Accordingly, this Court finds that it has the authority to stay its certificate of extradibility pending review.[1]

Courts consider four traditional factors before issuing a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably harmed absent a stay; (3) whether issuance of the stay will

---

[1] Indeed, the government acknowledges that several courts have exercised their discretion to issue stays of certification in extradition cases. See Docket No. 38 at 2 n. 2. See, e.g., Meza v. U.S. Attorney General, 693 F.3d 1350, 1355 (11th Cir. 2012); In re Assarsson, 670 F.2d 722, 724 (7th Cir. 1982); Garcia v. Benov, 715 F. Supp. 2d 974, 979 (C.D. Cal. 2009). These cases, however, only note in the procedural history that courts have issued stays prior to the filing of a habeas petition. They do not discuss the rationale for doing so. The only district court that appears to have addressed the issue directly found that it had no authority to issue such a stay. Matter of Extradition of Harshbarger, No. 5:08-MJ-00109, 2009 WL 702925, at *3 (M.D. Pa. Mar. 12, 2009). The Court disagrees with that analysis. In any event, that court reached the same practical result by changing the surrender date in order to allow the defendant a short continuance to file her habeas petition. Id.

substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken, 556 U.S. at 425-26 (quoting Hilton v. Braunskill, 481 U.S. 770, 76 (1987)).[2]

The first factor requires this Court to, once again, assess Hilton's arguments against extradition. By issuing the certificate of extradibility, this Court has already expressed its view that it believes that Hilton is subject to extradition. The Court therefore believes that Hilton will not be successful in his petition for a writ of habeas corpus. Nevertheless, the present request puts the Court in the situation of assessing the likelihood that its decision was wrong and will be reversed by a reviewing court. As another court has aptly explained:

> The first factor, "likelihood of success," presents the most conceptual difficulty. Obviously, we think an appeal will probably fail; we have reviewed our opinion and stand by it. Had we thought an appeal would be successful, we would not have ruled as we did in the first place. But a party seeking a stay need not show that it's more than 50% likely to succeed on appeal; otherwise, no district court would ever grant a stay. It is enough that the [movant] have a substantial case on the merits.

Westefer v. Snyder, No. 00-162-GPM, 2010 WL 4000599, at *3 (S.D. Ill. Oct. 12, 2010) (quoting Thomas v. City of Evanston, 636 F. Supp. 587, 590 (N.D. Ill. 1986)). Accordingly, "[w]hen the request for a stay is made to a district court, common sense dictates that the moving party need not persuade the court that it is likely to be reversed on appeal." Canterbury Liquors & Pantry v. Sullivan, 999 F. Supp. 144, 150 (D. Mass. 1998). Rather, "the movant must only establish that the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear." Id. (citations omitted).

Here, Hilton does present serious and difficult questions of law. Moreover, the potential harms to him are substantial. If Hilton is surrendered to the United Kingdom before he has an

---

[2] While there is no clear precedent regarding what standard should apply to this situation, courts have generally considered these factors in evaluating requests for a stay in several different contexts. See, e.g., Nken, 556 U.S. at 425-26 (stay pending removal proceedings); Respect Maine PAC v. McKee, 622 F.3d 13, 15 (1st Cir. 2010) (stay pending appeal).

opportunity to seek habeas review, he will be deprived of his right to seek habeas relief. Especially in light of Hilton's significant mental health issues, the Court is mindful that it should "seek to minimize the costs of being mistaken." Community Pharmacies of Indiana, Inc. v. Indiana Family and Social Servs. Admin., 823 F. Supp. 2d 876, 879 (S.D. Ind. 2011) (citing Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6, 12 (7th Cir. 1992)).

In addition, the Court finds that a 60-day stay will not harm the government or the public. Accordingly, the Court stands by its prior decision and the 60-day stay remains in effect.

B.  Continued Release

The government argues that Hilton's bail should be revoked because detention is mandatory after the Court certifies extradition. Docket No. 38 at 5. The government focuses on the language of Title 18, United States Code, Section 3184 which provides that, after the extradition hearing, if the Court determines that "the evidence [is] sufficient to sustain the charge," then the judicial officer "shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made." The government appears to focus on the "shall issue" and "there to remain" language. However, "[s]ection 3184 is silent regarding the availability of bail in extradition cases; it neither provides for nor prohibits it." Garcia v. Benov, No. CV 08-07719, 2009 WL 6498194, at *5 n. 23 (C.D. Cal. Apr. 13, 2009) (citations omitted). "The language in section 3184 may reflect 'policy considerations that are inconsistent with granting bail as a matter of course. This is not the same thing, however, as a blanket prohibition on bail." Id.

Accordingly, several courts have found that they have the authority to grant release after the issuance of a certificate of extradibility and during the pendency of habeas proceedings. See, e.g., Beaulieu v. Hartigan, 554 F.2d 1, 1-2 (1st Cir. 1977); Matter of Extradition of Kapoor, No.

11-M-456, 2012 WL 2374195, at *3 (E.D.N.Y. June 22, 2012) (collecting cases); Wroclawski v. United States, 634 F. Supp. 2d 1003, 1005-1006 (D. Ariz. 2009); Matter of Extradition of Harshbarger, 2009 WL 702925 at *3 n. 6.  As detailed in the March 4, 2013 order, Hilton demonstrated special circumstances, that he was not a flight risk and that he was not a danger to the community.  Docket No. 24.  The government has not argued that the factors identified in the Court's prior decision are no longer present.  Hilton has generally been compliant with his conditions of release.[3]  Accordingly, the Court finds that continued release on conditions is appropriate at this time.  Nevertheless, upon reflection, the Court modifies its decision to continue the release only during the pendency of any habeas proceedings in the district court.

IV.   ORDER

In accordance with the foregoing memorandum, the 60-day stay of the certificate of extradibility issued by the Court remains in effect.  It is further ORDERED that Hilton shall remain released on the same conditions set forth in the March 5, 2013 Order Setting Conditions of Release pending the outcome of habeas corpus proceedings in the district court.  Accordingly, should Hilton not file a habeas corpus petition by July 16, 2013, he shall surrender for commitment on July 31, 2013 at a place and time determined by the government.  If Hilton files a habeas petition, he shall surrender for commitment within thirty days after a denial of his petition absent further order of the Court.

   /s/  Jennifer C. Boal
Jennifer C. Boal
United States Magistrate Judge

---

[3] The Court notes that Pretrial Services alerted the Court that damage had occurred to Hilton's GPS monitoring unit's strap and that it needed to be replaced.  At this time, there is no evidence that Hilton tampered with the strap for the purpose of disabling or removing it.